UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**WESLEY KENYON,**

        **Plaintiff,**         **Case No.:**

**v.**

**OAK HILL MANAGEMENT FLORIDA, LLC,**

        **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, WESLEY KENYON, by and through his undersigned counsel and sues the Defendant, OAK HILL MANAGEMENT FLORIDA, LLC (hereinafter referred to "Defendant") and states as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367.

2. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3. Plaintiff, WESLEY KENYON, is an adult resident of Pinellas County, Florida. At all times material, Plaintiff was an employee of Defendant within the meaning of the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

4. Defendant, OAK HILL MANAGEMENT FLORIDA, LLC, is a Foreign Limited Liability Company authorized and doing business in this Judicial District. At all times material,

OAK HILL MANAGEMENT OF FLORIDA, LLC, employed Plaintiff. At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

## GENERAL ALLEGATIONS

5. At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

6. At all times material, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employer.

7. Plaintiff has retained the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

8. Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

9. On September 26, 2019, Plaintiff timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

10. On October 20, 2020, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination. This Complaint is filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

11. Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

## FACTUAL ALLEGATIONS

12. Plaintiff is a 31-year-old homosexual male.

13. In or around October 2018, Plaintiff began his employment with Defendant as a Leasing Specialist, working at Defendant's Providence at Palm Harbor apartment complex.

14. During Plaintiff's employment with Defendant, Plaintiff regularly received compliments and positive reviews from residents and was provided a letter of reference from a resident for his work ethic. Moreover, after just a few months of employment, Plaintiff received an annual bonus for 2018.

15. On November 28, 2018, Defendant's Owner, Benjamin Willner, emailed Plaintiff and told Plaintiff: "Your reputation precedes you and even with all the hype everyone has been raving about, you still managed to exceed all expectation!" Willner told Plaintiff that Defendant was "fortunate" to have him and looked forward to growing together. In addition, Willner instructed Lia Juliano (Director of Operations) and Nathan Naugle (Regional Manager) to involve Plaintiff in Defendant's marketing and social media. To that end, Defendant provided Plaintiff access to Defendant's Instagram account.

16. Shortly after Plaintiff's employment commenced with Defendant, Plaintiff's co-workers began regularly harassing Plaintiff because of his sex and/or sexual orientation. Plaintiff regularly told his co-workers to stop, but they refused.

17. During Plaintiff's first month of employment, Ivan Rivera (Maintenance) stated to Plaintiff that he did not know how someone can "be gay" and that his "ass" is "exit only." Billy Markley (Maintenance) responded: "I don't get that shit either." Rivera, Markley, and Jesus Rojas (Maintenance Supervisor) all looked at Plaintiff and laughed. Brittany Medina (Community Manager) was present and said nothing to protect Plaintiff.

18. Members of the maintenance department continued to make harassing and discriminatory comments, including, but not limited to:

    a. Rivera regularly said to Plaintiff: "hey fag, what's up?"

    b Rivera and Markley regularly called Plaintiff "gay boy."

    c. Rivera regularly made fun of Plaintiff's voice.

19. In addition, Rivera and Markley consistently talked to Plaintiff about women's bodies and heterosexual sex in extremely graphic terms. Medina also made sexual comments in the workplace and joked that the staff "probably" needed to re-take the sexual harassment course.

20. On or about November 12, 2018, Plaintiff agreed to take Rivera to pick up lunch since Rivera's car was having issues. When Rivera got in the car, the stated: "We are cool as long as you don't try any of that gay shit." Plaintiff reported Rivera's behavior to Medina and explained that this was becoming a common occurrence. Medina responded: "they are just joking around with you."

21. Medina was consistently dismissive of Plaintiff's complaints and told Plaintiff that she did not like confrontation.

22. On or about November 16, 2018, Rivera and Markley yelled "hey fag!" to a resident in the presence of Plaintiff. Again, Plaintiff complained to Medina and told her that Rivera often referred to Plaintiff as "fag." Medina shrugged off Plaintiff's complaint and said that they were "just being themselves."

23. In or around the week of November 19, 2018, Plaintiff's back hurt, and Rivera offered to crack Plaintiff's back if Plaintiff did not "get excited." Medina witnessed the event and, again, she said nothing.

24. On or about December 12, 2018, a discussion took place regarding secret Santa/gift exchange. Rivera asked what would happen if Plaintiff received tools and did not like it because Plaintiff wanted "some Bath and Body Works shit." Again, Plaintiff talked to Medina about the comment. Medina brushed it off and said that Rivera was "just joking around."

25. On or about December 14, 2018, Markley yelled "gay!" over the walkie talkie. Both Plaintiff and Medina heard the comment, but Medina did nothing to stop the behavior.

26. In or around February or March 2019, Naugle denied Plaintiff access to Defendant's Instagram account.

27. On or about February 3, 2019, Plaintiff attended a Super Bowl party at Medina's home. During the party, Troy (last name unknown, Property Manager) slapped Plaintiff so hard in the thigh that it left a mark.

28. On or about February 28, 2019, Rivera told Plaintiff: "You look like a gay Drop Dead Fred." Rivera continued with this "joke" for the next few weeks.

29. On or about March 11, 2019, Markley took a file from the closet and commented to Plaintiff: "Look, I'm coming out of the closet, don't get any ideas though." Once again, Plaintiff complained to Medina and she ignored his complaint.

30. On or about March 14, 2019, the staff was having lunch for Plaintiff's birthday and Medina brought up the attractiveness of a particular actor. Plaintiff agreed that he is "beautiful", and Rivera interrupted: "dude, don't talk about two dudes like that, I'm trying to eat here." Rivera continued to say that the thought of two men together is "disgusting" and that if he thought about it, he would "be sick."

31. In or around the week of April 22, 2019, Rivera was again commenting to Plaintiff about women's bodies in graphic detail. Plaintiff complained to Medina and Medina said that she

would speak with Rivera.  Plaintiff followed up with Medina to confirm that she spoke with Rivera and Medina told Plaintiff that it was not his "business."

32. In or around the week of April 22, 2019, Plaintiff complained to Emily Kulp (Assistant Manager) about how Rivera spoke to him; in particular, how Rivera called Plaintiff "gay boy."  Kulp said that she would talk to Medina.  Plaintiff is unaware if Kulp spoke to Medina.  Nevertheless, the harassing and discriminatory behavior continued.

33. On April 24, 2019, Plaintiff was written up for not checking voicemails before he left for the day, which was outside of Plaintiff's control due to computer issues.

34. In May 2019, Plaintiff complained to Medina that Rivera and Markley were making fun of his voice and telling gay jokes.  Medina responded that they only tease people because they like them.

35. On June 6, 2019, Plaintiff was written up by Medina for failing to notify alert maintenance of an emergency work order, despite the fact that Plaintiff notified them via walkie talkie.

36. On or about June 13, 2019, Markley yelled to Rivera in Plaintiff's presence: "get off my ass, faggot!"  Again, Medina heard the comment and did nothing.

37. On June 18, 2019, Medina issued Plaintiff a write-up.  Plaintiff refused to sign the reprimand because he disagreed that he engaged in any infraction.

38. On June 21, 2019, Medina issued Plaintiff a write-up.  Plaintiff refused to sign the reprimand because he disagreed that he engaged in any infraction.

39. Plaintiff's co-workers committed the same or worse workplace infractions compared to Plaintiff but were not reprimanded for their behavior.

40. On June 25, 2019, Plaintiff made a complaint to Nathan Naugle regarding the harassment and discrimination. Plaintiff provided Naugle with specific incidences of harassment and discrimination. During the meeting, Plaintiff reminded Medina that he went to her multiple times about the discrimination and harassment, but Medina did nothing. Medina claimed that Plaintiff did not talk to her about it.

41. On June 26, 2019, all staff at Providence of Palm Harbor were required to sign a document agreeing that they would not exhibit any forms of inappropriate behavior. Nevertheless, the harassment, discrimination, and retaliation toward Plaintiff continued.

42. On or about July 11, 2019, Rivera transferred to one of Defendant's other properties. However, Rivera continued to live at Defendant's Providence at Palm Harbor apartment complex where Plaintiff worked.

43. On or about July 20, 2019, Markley asked Plaintiff for a light bulb. Plaintiff could only find an oddly shaped bulb and asked Markley what the bulb was meant for. Markley responded: "I don't know, but don't go getting excited, it's not a butt plug."

44. On or about August 5, 2019, Jason Ricklemann became the new Assistant Manager. Quickly, Ricklemann joined in the sex-based commentary.

45. On or about August 12, 2019, Ricklemann showed Plaintiff an inappropriate sex-based picture on his phone.

46. On September 5, 2019, Plaintiff's attorneys sent a letter to Defendant. In particular, Plaintiff's counsel demanded that Defendant investigate Plaintiff's claims and prevent future instances of discrimination in the workplace.

47. On September 25, 2019, Plaintiff filed his Charge of Discrimination with the Equal Employment Opportunity Commission.

48. By October 2019, Plaintiff's co-workers were not inviting him to coffee breaks and Naugle avoided Plaintiff or gave him one-word answers. Moreover, Medina began shutting her office door and telling Plaintiff not to bother her.

49. On or about December 9, 2019, Plaintiff was hungry and ate a big lunch. Medina noticed and called Plaintiff "tubba wubba" and "silly little piglet."

50. On December 11, 2019, Plaintiff was placed on a paid suspension pending Defendant's investigation. During Plaintiff's suspension, Ricklemann told residents and prospects that Plaintiff no longer worked for Defendant.

51. Additionally, Defendant only paid Plaintiff for 39 hours of his suspension rather than 40.

52. During Plaintiff's suspension, Plaintiff was interviewed by Lia Juliano (Director of Operations). Plaintiff generally provided Juliano with the acts of discrimination, harassment, and retaliation. Furthermore, Plaintiff told Juliano that he repeatedly complained to Naugle and Medina, but they did not take action to stop the discrimination and harassment. Juliano took notes during the conversation.

53. During Plaintiff's suspension, Medina was terminated from her employment with Defendant.

54. Similarly, during Plaintiff's suspension, Rivera was terminated from his employment with Defendant.

55. Ricklemann, Markley, and Rojas were all retained.

56. On December 16, 2019, Rivera sent Plaintiff an Instagram message stating: "I hope you are happy for what you did. Trust and believe this didn't hurt me bro. You will pay for this.

Carma [sic] is a bitch.  Especially when you lie.  Good luck to you."  Plaintiff reported the threat to Naugle and Naugle said he would talk to Rivera.

57. On December 18, 2019, Plaintiff returned to work following his suspension.  Upon Plaintiff's return, he observed that his drawers and computer were searched and that Defendant took away his keys to the Assistant Manager and Community Manager's offices.

58. Moreover, Plaintiff's login was changed, and his access was restored the day before he returned to work.

59. That same day (December 18, 2019), lunch was brought in for everyone except Plaintiff.

60. Additionally, Rivera—who was terminated but still living on property—approached Plaintiff and said: "how did you manage to get your job back, man?"  Plaintiff was startled and told Rivera that he did not lose his job.  In a rude and sarcastic manner, Rivera responded: "I appreciate what you did, man.  Thanks a lot for lying."  Plaintiff promptly reported Rivera to Naugle and told Naugle that he did not feel comfortable working by himself that weekend.

61. On or about December 20, 2019, Plaintiff received his annual review.  The review was not as positive as the review from the prior year and Plaintiff refused to sign as he disagreed with much of it.

62. In or around late December 2019, Aaron Valenzuela became the new Community Manager.  Immediately, Valenzuela began micromanaging Plaintiff and talking down to Plaintiff.  When Plaintiff asked Valenzuela a question, Valenzuela responded abrasively.

63. On or about December 30, 2019, Ricklemann criticized Plaintiff for not working a day on which Plaintiff was not scheduled.  Plaintiff received a verbal counseling.

64. Plaintiff was not paid his annual bonus for 2019 despite Naugle and Medina telling Plaintiff that he would receive the bonus. By comparison, Plaintiff's co-workers who were written up or were intoxicated on the job received their bonuses.

65. Plaintiff asked Naugle why he did not receive the bonus and was told that it was "merit based." Plaintiff asked for the criteria Defendant used to determine merit and Naugle told Plaintiff: "We don't have anything like that."

66. On or about January 16, 2020, Plaintiff was informed by Valenzuela that he was required to work every Saturday for the indefinite future and was no longer permitted to work through his lunch.

67. On or about January 20, 2020, Plaintiff emailed Ben Willner (Owner) and provided a detailed complaint of retaliation. Plaintiff also told Willner that he was dealing significant stress from the job because he was so worry about going into work.

68. On or about January 22, 2020, Defendant closed the office at 4:00 p.m. for a company party. Plaintiff did not feel comfortable attending the party and was required by Aaron Valenzuela (Community Manager) to continue working until 5:30 p.m.

69. On or about January 24, 2020, Plaintiff was told that he would receive a $500.00 bonus; however, Defendant only paid Plaintiff $440.00.

70. On January 26, 2020, Plaintiff's treating physician ordered Plaintiff to be off from work until February 2, 2020 "due to stress induced environment."

71. On February 5, 2020, Rivera threatened Plaintiff again. Specifically, Rivera pulled up to Plaintiff and from his car told Plaintiff: "If I ever see you on the street and you approach me, there's going to be a problem." Rivera continued, telling Plaintiff that it was Plaintiff's fault that

he was terminated because Plaintiff "said all this shit about me and Brittany." Plaintiff informed Naugle of Rivera's threatening behavior.

72. On February 6, 2020, Willer finally responded to Plaintiff's January 20, 2020 email and dismissed Plaintiff's concerns.

73. On March 6, 2020, Plaintiff submitted his letter of resignation. Plaintiff provided a detailed explanation as to why he felt that he was forced to resign due to the ongoing harassment, discrimination, and retaliation. Plaintiff noted that all he wanted from Defendant was "for someone to take these complaints seriously." Valenzuela sent Plaintiff a text message acknowledging Plaintiff's resignation. No other member of Defendant's management contacted Plaintiff regarding his detailed resignation letter.

## COUNT I
## TITLE VII—SEX HARASSMENT

74. Plaintiff, WESLEY KENYON, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through seventy-three (73).

75. Plaintiff, a homosexual male, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII").

76. The aforementioned actions by Ivan Rivera, Billy Markley, Brittany Medina, and Jason Ricklemann constitute unwelcome sex-based harassment.

77. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

78. Defendant knew or should have known of the harassment of Plaintiff.

79. The aforementioned actions created a hostile environment and constitute discrimination on the basis of gender/sex, in violation of Title VII.

80. The sex-based harassment and conduct of Rivera, Markley, Medina, and Ricklemann created a hostile work environment which interfered with Plaintiff's ability to perform his job.

81. Defendant's actions were intentional and encouraged an environment where degradation based on sex was common and tolerated.

82. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

83. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

   a.  Back pay and benefits;

   b.  Prejudgment interest on back pay and benefits;

   c.  Front pay and benefits;

   d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

   e.  Punitive damages;

   f.  Attorneys' fees and costs;

   g.  Injunctive relief; and

   h.  For any other relief this Court deems just and equitable.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT—SEX HARASSMENT

84. Plaintiff, WESLEY KENYON, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through seventy-three (73).

85. Plaintiff, a homosexual male, is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

86. The aforementioned actions by Ivan Rivera, Billy Markley, Brittany Medina, and Jason Ricklemann constitute unwelcome sex-based harassment.

87. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

88. Defendant knew or should have known of the harassment of Plaintiff.

89. The aforementioned actions created a hostile environment and constitute discrimination on the basis of gender/sex, in violation of the Florida Civil Rights Act.

90. The sex-based harassment and conduct of Rivera, Markley, Medina, and Ricklemann created a hostile work environment which interfered with Plaintiff's ability to perform his job.

91. Defendant's actions were intentional and encouraged an environment where degradation based on sex was common and tolerated.

92. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

93. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

      d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.      Punitive damages;

      f.      Attorneys' fees and costs;

      g.      Injunctive relief; and

      h.      For any other relief this Court deems just and equitable.

## COUNT III
## TITLE VII - SEX DISCRIMINATION

94.    Plaintiff, WESLEY KENYON, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through seventy-three (73).

95.    Plaintiff, a homosexual male, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").

96.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his sex by denying Plaintiff bonuses and constructively discharging Plaintiff from his employment.

97.    Defendant's adverse employment actions toward Plaintiff were motivated by sex-based considerations.

98.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

99.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

100.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

      a.      Back pay and benefits;

      b.      Prejudgment interest on back pay and benefits;

      c.      Front pay and benefits;

      d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.      Punitive damages;

      f.      Attorneys' fees and costs;

      g.      Injunctive relief; and

      h.      For any other relief this Court deems just and equitable.

## COUNT IV
## FLORIDA CIVIL RIGHTS ACT - SEX DISCRIMINATION

101.    Plaintiff, WESLEY KENYON, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through seventy-three (73).

102.    Plaintiff, a homosexual male, is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

103.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his sex by denying Plaintiff bonuses and constructively discharging Plaintiff from his employment.

104.    Defendant's adverse employment actions toward Plaintiff was motivated by sex-based considerations.

105.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

106.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

107. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e. Punitive damages;

    f. Attorneys' fees and costs;

    g. Injunctive relief; and

    h. For any other relief this Court deems just and equitable.

## COUNT V
## TITLE VII – RETALIATION

108. Plaintiff, WESLEY KENYON, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through seventy-three (73).

109. Plaintiff engaged in protected activity by opposing an employment practice made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII"). Specifically, Plaintiff opposed sex-based harassment, discrimination, and retaliation by making reasonable, good-faith complaints regarding the same.

110. In retaliation for engaging in protected activity, Plaintiff suffered adverse employment actions when he was harassed, reprimanded, denied bonuses, and was constructively discharged by Defendant.

111. Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendant are causally connected to his opposition and resistance of sex-based harassment, discrimination and retaliation.

112. The aforementioned actions by Defendant constitute retaliation by Defendant in violation of Title VII of the Civil Rights Act of 1964.

113. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

114. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a. Back pay and benefits;

b. Prejudgment interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e. Punitive damages;

f. Attorneys' fees and costs;

g. Injunctive relief; and

h. For any other relief this Court deems just and equitable.

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT—RETALIATION

115. Plaintiff, WESLEY KENYON, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through seventy-three (73).

116. Plaintiff engaged in protected activity by opposing an employment practice made unlawful by the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"). Specifically, Plaintiff opposed sex-based harassment, discrimination and retaliation by making reasonable, good-faith complaints regarding the same.

117. In retaliation for engaging in protected activity, Plaintiff suffered adverse employment actions when Plaintiff was harassed, reprimanded, denied bonuses, and was constructively discharged by Defendant.

118. Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendants are causally connected to his opposition and resistance of sex-based harassment, discrimination and retaliation.

119. The aforementioned actions by Defendant constitute retaliation by Defendant in violation of the Florida Civil Rights Act.

120. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

121. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e. Punitive damages;

      f.      Attorneys' fees and costs;

      g.      Injunctive relief; and

      h.      For any other relief this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

122.    Plaintiff, WESLEY KENYON, demands a trial by jury on all issues so triable.

**DATED** this 15th day of January 2021.

        **FLORIN GRAY BOUZAS OWENS, LLC**

        *Gregory A. Owens*
        **GREGORY A. OWENS, ESQUIRE**
        Florida Bar No.: 51366
        greg@fgbolaw.com
        **WOLFGANG M. FLORIN, ESQUIRE**
        Florida Bar No.: 907804
        wolfgang@fgbolaw.com
        16524 Pointe Village Drive, Suite 100
        Lutz, Florida 33558
        (727) 254-5255
        (727) 483-7942 (fax)
        *Trial Attorneys for Plaintiff*